Minute Order Form (06'07)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7319 | **DATE** | 9/21/2000 |
| **CASE TITLE** | Van Jackson, et al. Vs. Check 'N Go of Illinois, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Plaintiffs's motion for summary judgment (52-1) with respect to liability of Check 'N Go under Count I and II is granted and statutory damages are awarded. Defendants' motion for summary judgment (59-1) is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | SEP 2 2 2000 date docketed |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | FILED FOR DOCKETING 00 SEP 21 PM 5: 31 | |
| | Copy to judge/magistrate judge. | | 9/21/2000 date mailed notice |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ6 mailing deputy initials |

Document Number 68

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADELE M. VAN JACKSON, LIZABETH MACCOGNO, JAMES MILTON, CATHERINE STURGESS, GWEN JOHNSON-HARRIS, LAURITA COBB, HEATHCLIFF ANDERSON, KATHERINE NEWSOM, KENNETH STRYBEL, LINDA RUTH BUTLER, CHANEL L. TELL, BETTIE TALLEY f/k/a BETTIE PERRY, TYRONE TILLMAN, DIANE BURGIN, J.R. DAVIS, and VENUS JONES,

Plaintiffs,

v.

CHECK 'N GO OF ILLINOIS, INC., CNG FINANCIAL CORPORATION, JARED A. DAVIS, DAVID DAVIS, and JOHN DOES 1-10,

Defendants.

No. 99 C 7319

DOCKETED
SEP 2 2 2000

## MEMORANDUM OPINION AND ORDER

Check 'N Go of Illinois made "payday loans"--short term loans at high annual interest rates of over 500%--to impecunious borrowers, and took as "security" postdated checks due on the debtors' next payday. The plaintiffs sued for statutory damages under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") and Regulation Z, 12 C.F.R. §§ 226.17-18 (count I) and several individual TILA claims (count II), among other counts that are not

relevant here. I certified the class of all Illinois debtors of the defendants who signed one of four consumer loan agreements after November 10, 1998, with respect to count I, and declined to dismiss counts I or II. The parties now make cross motions for summary judgment on those two counts. The issue in the case is whether the defendants make the required TILA disclosures of the existence of a "security" in the postdated checks. Having determined that they have not adequately disclosed this "security," I grant the plaintiffs' motion and deny the defendants' motion, because I hold either that there is a security interest in the postdated checks or, if it is not a "security interest," that TILA requires a lender to disclose the "security" for such a loan.

I.

TILA requires a lender to provide "[w]here the credit is secured, a statement that a security interest has been taken in . . . property not purchased as part of the credit transaction identified by item or type." 15 U.S.C. § 1638(a)(9); see also 12 C.F.R. § 226.18(m) ("Security interest [disclosure]. The fact that the creditor has . . . acquire[d] a security interest . . . in other property identified by item or type."). All disclosures required by federal law must be grouped together and "conspicuously segregated" from other information. 15 U.S.C. § 1638(b)(1).

I denied the defendants' motion to dismiss the plaintiffs' TILA claims because I found that they had violated § 1638(a)(9) by failing to disclose that postdated checks secured the loans. *See Van Jackson v. Check 'N Go*, 193 F.R.D. 544 (N.D. Ill. 2000)(more detailed discussion of the matter, including quotations from the purported disclosures). As I explained there, the defendants did not make the required disclosure and that the law did not bar statutory damages when "a required disclosure is hidden in the fine print at the end of an indigestible chunk of legalistic boilerplate, and outside the federal box, set apart from the defendants' own statement in that box about 'Our Disclosures to You.'" *Id.* at 549 (*citing Leathers v. Peoria Toyota-Volvo*, 824 F. Supp. 155, 158 (N.D. Ill. 1993)(Where "[t]he actual reference to the [collateral was] outside the 'Federal Box' [it] cannot be considered to be part of the required disclosures.").

Understandably, the plaintiffs now ask for summary judgment on the TILA counts. I concluded in my previous opinion that the defendants were liable under § 1638(a)(9), and unless they have an argument that I was wrong, I will grant that motion. They now argue that they were not required to disclose that the postdated checks secured the loans because, they say, the Seventh Circuit has held

-3-

that a postdated check is a "security" for a loan, not a "security interest" for a loan. *See Smith v. Cash Store Management*, 195 F. 3d 325, 331 (7th Cir. 1999). Indeed, the defendants say that it would be *illegal* to disclose a "security interest" that does not exist. *See Bashman v. Finance America Corp.*, 583 F.2d 918, 924 (7th Cir. 1978) (overbroad statement of security interest violated TILA); *Tinsman v. Moline Beneficial Financial Co.*, 531 F.2d 815, 818 (7th Cir. 1976) (same).

This is a bold and striking argument.[1] The defendants turn around a Seventh Circuit holding that the disclosure requirement is satisfied by saying that a postdated check is a "security," rather than a "security interest," and argue that because the Seventh Circuit says that the postdated check is *merely* a security, and therefore, by implication, not a security interest, the fact that it secures the loan need not, and perhaps may not, be disclosed at all. One has to admire this display of lawyerly technical virtuosity. However, I am not persuaded.

---

[1] I doubt that the defendants really believe that they were not permitted to disclose that the postdated checks secured the loan: if they thought that, they would not have made the inadequate gestures in the direction of disclosure they did make.

## A.

First, *Smith* does not actually hold that a postdated check in a payday loan context is *not* a security interest. It holds, rather, that a payday lender did not violate TILA's § 1638(a)(9) by stating that the postdated check was a "security" rather than a "security interest." Indeed, *Smith* plainly does not decide whether a postdated check taken as a "security" by a payday lender is a security interest or not. The *Smith* court stated that for an instrument to be "collateral" or "collateral security" under Illinois law, the collateral must have "some value beyond the promise to pay contained in the loan agreement itself." *Smith*, 195 F.3d at 330. Some additional value "is created by the [Illinois] bad check statute and other legal provisions governing instruments." *Id.* at 331. The reasoning is that, because the lender has remedies available to him under the bad check statute, 810 ILCS 5/3-806, the check has value beyond the paper on which it is written. The postdated check, then, is clearly collateral security.

The Seventh Circuit carefully says that "[t]his is not to say that by putting up a check as collateral, a lender . . . necessarily takes a security interest in the *amount* printed on the face of the instrument." 195 F.3d at 330 (emphasis in original).

-5-

This extremely precise and qualified statement does not deny that a postdated check might well be a security interest, or even that a lender might indeed take a security interest in the amount printed on the face of the instrument (although that is not the issue presented here). The partial dissent in that case noted as much, stating that in its view, on the contrary, "possessing a post-dated check does not create a 'security interest.'" *Id.* (Manion, J., dissenting in part and concurring in the judgment). This view, however, was not adopted by the panel majority, which did not find it necessary to reach the question, but confined itself to whether it was a TILA violation to list the check as a "security." In a subsequent per curiam opinion, the court refused to expand on this holding or to rule that a postdated check was not a security interest. *See Hahn v. McKenzie Check Advance*, 202 F.3d 998 (7th Cir. 2000).

B.

Regulation Z defines a "'security interest' as "an interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law." 12 C.F.R. § 226.2(a)(25). In this context, the postdated checks secure the performance of the borrowers' obligations to repay the payday

-6-

loans, and that interest is recognized by state law in the form of the bad check statute and by federal case law in the form of *Smith*. These checks are therefore security interests within the meaning of § 1638(a)(9). That the lender uses the term "security" and not "security interest" makes no difference. The Official Staff Interpretation to Regulation Z does not insist on any magic words: "No specified terminology is required in disclosing a security interest. Although the disclosure may, at the creditor's option, use the term 'security interest,' the creditor may designate its interest by using, for example, 'pledge,' 'lien,' or 'mortgage.'" 12 C.F.R. pt. 226, Supp. I ¶¶ 18(m) & 6(c).

Moreover, I agree with the many federal courts in Illinois that, in this context, have found that "as a matter of law, there is no meaningful distinction between the term 'security interest' and 'security'" in this context." *Hahn v. McKenzie Check Advance*, 61 F. Supp.2d 813, 815 (C.D. Ill. 1999)(Mills, J.), *aff'd on other grounds by* 202 F.3d 998 (7th Cir. 2000).[2]

---

[2] *Accord Jackson v. Americash Loans, LLC*, No. 99 C 3255, 1999 WL 759492, at *2 (N.D. Ill. Sept. 8, 1999)(Kennelly, J.); *Mitchem v. American Loan Co.*, 99 C 1868, 2000 WL 290276, at *3 (N.D. Ill. Mar. 17, 2000) (Coar, J.) (relying on *Smith*); *Mitchem v. GFG Loan Co.*, No. 99 C 1866, 2000 WL 294119, at *3 (N.D. Ill. Mar. 17, 2000) (Pallmeyer, J.); *Pinkett v. Moolah Loan Co.*, No. 99 C 2700, 1999 WL 1080596, at *9 (N.D. Ill. Nov. 2, 1999) (Hibbler, J.); *Davis v.*

Indeed, it would make no sense to treat the taking of the postdated check as anything but a security interest in the sense of § 1638(a)(9). The payday lender in this case takes the postdated check with the intention of using the state bad check law to secure otherwise questionable collateral--a possibly bad check from someone who probably could not get conventional credit, or he would not be using a service that charged over 500% interest. That is, the lender uses the postdating and the state bad check law to create the functional equivalent of a security interest, something that will secure its loan by providing collateral. The defendants invoke the formalistic fact that the statute requires disclosure of a "security interest," but the lender has only used the term "security," with the imprimatur of the Seventh Circuit, which has said that it is not a violation to use that term. Legal presumptions that rest on formalistic distinctions rather than actual market realities are generally disfavored . . . . " *Eastman*

---

*Cash for Payday, Inc.*, 193 F.R.D. 518, 525 (Apr. 2000)(Castillo, J.); *Donnelly v. Illini Cash Advance, Inc.*, No. 00 C 094, 2000 WL 1161076, at *5 (N.D. Ill. Aug. 16, 2000.)(Gottschall, J.), and myself in *Terry v. Payday Loans*, No. 99 C 2487, 1999 WL 1144968, at *1 (N.D. Ill. Oct. 6, 1999)(Bucklo, J.); *but see Smith v. Americash, Inc.*, No. 99 C 1839, 1999 WL 521167, at *1 (N.D. Ill. July 12, 1999)(Conlon, J.).

*Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 466 (1992) (antitrust context). The market reality is that the postdated check is taken precisely to create what amounts to a security interest. Therefore, I find that a creditor's taking possession of a postdated check with the intention of securing a loan by means of of the state bad check law or other rules governing such instruments creates a security interest in the check within the meaning of § 1638(a)(9), and must be disclosed.

C.

Finally, even if, as the defendants argue, there were only a "security" and not a "security interest" in the postdated check, I conclude that it would still have to be disclosed under § 1638(a)(9). The plain language of the statute itself does not require the existence of a security interest, narrowly construed, for the disclosure to be mandated by the law. Section 1638)(a)(9) directs the lender to provide, "[w]here the credit is secured, a statement that "a security interest has been taken . . . ." Read literally, this means that if the credit is secured at all, in any way, whether by a orthodox Article 9 security interest or by any other means, the lender must in some way state that a security interest has been taken in it. "'Courts must presume that a legislature says in a statute what it means and means in a statute

what it says there.'" *In the Matter of Lifschultz Fast Freight Corp.*, 63 F.3d 621, 628 (7th Cir. 1995) (quoting *Connecticut Nat'l. Bank v. Germain*, 503 U.S. 249, 253-254 (1992)). Even if there were "some justification for concern" about the application of the literal language," which is not the case here, "courts cannot re-write statutes." *In the Matter of Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994).

Here, the defendants admit that the postdated checks were security for the loans, that is, that the loans were secured by those checks. In view of that undisputed fact, the statute required them to disclose that it had taken a security interest. Even if it were literally false that the lender had taken a security interest in the U.C.C. Article 9 sense, the Regulations take a liberal attitude towards the use of different terms in the disclosure, and because of *Smith* the lender would not be required to state a falsehood. It could disclose that the loan was "secured" or that the postdated check served as "security" for the loan. Here the defendants did not.

The "exception to the plain meaning rule [is] the 'rare case[] [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'"

*Pittway Corp. v. United States*, 102 F.3d 932, 936 (7th Cir. 1996) (*quoting United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989)). Requiring the lender to disclose the existence of the security would not be contrary to the intentions of the drafters. Congress enacted TILA "'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit card practices.'" *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927, 930 (7th Cir. 1998)(*quoting* 15 U.S.C. § 1601(a)); *see also Brown v. Marquette Sav. & Loan Ass'n*, 686 F.2d 608, 612 (7th Cir. 1982) (Congress enacted TILA to "provide information to facilitate comparative credit shopping and thereby the informed use of credit by consumers.").

It would in fact frustrate the purpose of TILA and the intention of Congress to read the act to say that a "security" that for some reason failed to rise to the level of a "security interest" need not or may not be disclosed in the consumer loan context. To so read the law would be particularly inapposite if the reason that the postdated check used to secure a payday loan failed to be a security interest was because the loans were made to

precisely those most desperate for credit and lacking in other collateral. Essentially, that would mean reading the law to say that Congress protected the propertied, whose collateral can be in some sense "properly" secured, but allowed predators a field day to deceive and mislead the poorest and weakest in our society.

III.

The defendants ask me, if I find that they took a security interest in the check, to hold that the plaintiffs must prove actual damages and are not entitled to statutory damages because they have not violated the disclosure requirement, § 1638(a)(9), but merely the conspicuous segregation requirement, § 1638(b)(1), a violation of which does not merit statutory damages. *See Brown v. Payday Check Advance*, 202 F.3d 987, 991 (7th Cir. 2000). If I accepted this argument, I would have already granted the defendants' motion to dismiss. Instead, I discussed it detail and rejected it in my opinion denying that motion. *See Van Jackson*, 193 F.R.D. at 548-49. There I held that the required information about the check as security or security interest had not been disclosed at all for various reasons, not merely or mainly because of the lack of conspicuous segregation:

(1) The defendants placed the statements outside the federal

box, and

(2) themselves excluded the statements from the list of "our disclosures to you," so their own evidence shows that the required information was not disclosed;

(3) The statements were written in obscure, hard-to-read, and inaccessible legalistic jargon;

(4) The purported "disclosures" were buried in subordinate clauses at the end of these opaque and convoluted sentences; and

(5) The major clauses and headings of these sentences would not alert a reader that a disclosure of a security interest or a security was forthcoming, and so the sentences were misleading.

Some of these problems, most notably (1) and (4), might also constitute a violation of the conspicuous segregation requirement, and the defendants have admitted this violation in their motion to dismiss. But as I held in my previous opinion denying that motion, statements suffering from the enumerated defects also fail to "disclose" the required information in any meaningful way. As I noted there, "'disclosure' [means] . . . 'opening up to view, revelation, discovery, exposure.' The treatment of required information about the security does not qualify as opening up to view, revelation, discovery, or exposure." *Id.* at 549 (*citing*

*United States and Mathews v. Bank of Farmington*, 166 F.3d 853, 860 (7th Cir. 1999) (*quoting* 4 *Oxford English Dictionary* 738 (2d ed.1989) (qui tam context)). Because there was no disclosure, and because there was either a security interest taken in the postdated checks or a security that was required to be disclosed under the statute, the defendants are liable for violation of § 1638(a)(9).

IV.

Accordingly, I DENY the defendants' summary judgment motion and GRANT the plaintiffs' summary judgment motion. Statutory damages are awarded.

ENTER ORDER: *Elaine E. Bucklo*

Elaine E. Bucklo
United States District Judge

Dated: September 21, 2000

Copies have been mailed to:

Daniel A. Edelman
Edelman, Combs & Latturner
120 S. LaSalle Street, 18th Fl.
Chicago, IL 60603

Attorney for Plaintiffs

Daniel F. Konicek
Konicek & Dillon
112 N. First Avenue, #401
St. Charles, IL 60174

Attorney for Defendants