Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7319 | **DATE** | 9/21/2000 |
| **CASE TITLE** | Van Jackson, et al. Vs. Check 'N Go of Illinois, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs's motion to disqualify (38-1) Konicek and Dillon from further representation of the defendants in this action is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 22 2000 date docketed | 69 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 00 SEP 21 PM 5: 31 | 9/21/2000 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADELE M. VAN JACKSON, et al. )
)
        Plaintiffs, )
)
v. ) No. 99 C 7319
)
CHECK 'N GO OF ILLINOIS, INC. )
CMG FINANCIAL CORPORATION, )
JARED A. DAVIS, A. DAVID DAVIS, )
and JOHN DOES 1 - 10, )
)
        Defendants. )
)

DOCKETED
SEP 22 2000

## MEMORANDUM OPINION AND ORDER

This case presents the question of whether a four-attorney law firm can continue to represent a defendant in a case after hiring a lawyer from plaintiff's law firm who previously represented some of the named plaintiffs in the same lawsuit but claims the lawyer has been effectively screened from the lawsuit. On these facts, I conclude they cannot and grant plaintiffs' motion to disqualify defendants' counsel, Konicek & Dillon, from this action.

I.

Jeffrey Mitchell is a former associate of the law firm representing the plaintiffs in this case, Edelman, Combs & Latturner ("ECL"). Mr. Mitchell began working for ECL as a paralegal in

69

November 1996 and was made an associate in June of 1998. He left ECL in March of 2000 and is presently employed by defendants' counsel, Konicek and Dillon ("K&D"), a law firm which consists of its two named principals, an of-counsel, and now Mr. Mitchell.

ECL maintains that while Mitchell was in its employ, he was heavily involved in lawsuits against "payday lenders" and "title lenders," appearing in at least fifty-five of such cases, including *Brown v. Check 'N Go of Illinois, Inc.*, 99 C 2073 (N.D. Ill.). As a result, Mr. Mitchell became familiar with confidential information and strategies employed by ECL regarding such claims, including the prosecution of unconscionability claims. ECL continues to prosecute such cases, including the instant action against the Check 'N Go defendants. Mr. Mitchell personally represented at least two of the plaintiffs in this action during his tenure at ECL; his responsibilities in this regard included unearthing any negative or derogatory information that defendants might use against these plaintiffs in opposing class certification.

## II.

Disqualification is a "drastic measure that courts should impose only when absolutely necessary." *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993)(citations omitted). Motions to disqualify

"should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721-22 (7th Cir. 1982). Accordingly, the burden is on the moving party to show the facts warranting disqualification. *See Weeks v. Samsung Heavy Industries Co.*, 909 F.Supp. 582, 583 (N.D. Ill. 1996); *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739-40 (2d Cir. 1978). However, any doubts as to the existence of an asserted conflict must be resolved in favor of disqualification. *U.S. v. Goot*, 894 F.2d 231, 235 (7th Cir. 1990).

### III.

Plaintiffs move to disqualify K&D based on Mr. Mitchell's previous work at ECL with some of the named plaintiffs (and other plaintiffs in similar cases) and Mr. Mitchell's current work on behalf of Check 'N Go. Mr. Mitchell is alleged to have developed the strategy and underlying proof scheme showing that the loans are unconscionable and violate the Consumer Fraud Act, in the form of facts, statistical analysis, and expert testimony. ECL claims that K&D and Mr. Mitchell now take positions materially adverse to the plaintiffs he previously represented in violation of the ethical rules of the Northern District of Illinois.

Local Rules of Professional Conduct for the Northern District of Illinois ("Local Rules") 1.9 and 1.10 govern disqualification matters involving former clients. Local Rule 1.9(b) provides that:

> A lawyer shall not knowingly represent a person in the same or a substantially related matter in which the firm with which the lawyer formerly was associated had previously represented a client,
> (1) whose interests are materially adverse to that person, and
> (2) about whom the lawyer had acquired information protected by Rule 1.6 and 1.9(c) that is material to the matter; unless the former client consents after disclosure.

Although Mr. Mitchell does not himself currently represent a party in this litigation, the defendants do not deny that he possesses crucial, highly confidential information regarding the case of these and other similarly situated plaintiffs and the strategies and evidentiary foundation devised by ECL on their behalf. Mr. Mitchell represented certain of the named plaintiffs in the present case. Mr. Mitchell's new firm, K&D, represents the opposing party, Check 'N Go. The plaintiffs have not consented to Mr. Mitchell's representation of Check 'N Go, so because Mr. Mitchell has information material to the present matter, he is clearly precluded from any role in this action and would be disqualified were he to participate. Local Rule 1.10(b), the "imputed disqualification rule," provides a basis for

disqualification of the entire firm unless "the newly associated lawyer is screened from any participation in the matter and is apportioned no specific share therefrom."

K&D believes it should prevail because plaintiffs have presented "no evidence that Mr. Mitchell has come into contact, provided advice, or in any way consulted" in this case. ECL misunderstands its burden. Although the movant has the burden in a motion to disqualify, the knowledge possessed by one attorney in a firm is presumed to be shared with the other attorneys at that firm. *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 257 (7th Cir. 1983). A law firm can rebut this presumption by demonstrating that specific institutional mechanisms, screens or "Chinese walls," have been employed to prevent any flow of confidential information from the "tainted" lawyer to any other members of his present firm. *Id.*, 703 F.2d at 257; *Schiessle v. Stephens*, 717 F.2d 417, 421 (7th Cir. 1983). Moreover, K&D must rebut the presumption of shared confidences with "clear and effective" proof. *Schiessle*, 717 F.2d at 420. I evaluate the effectiveness of such screens on a case-by-case basis, *Schiessle*, 717 F.2d 417, at 421, considering, *inter alia*, the following factors:

> the size and structural divisions of the law firm involved, the likelihood of contact between the

"infected" attorney and the specific attorneys responsible for the present representation, [and] the existence of rules which prevent the "infected" attorney from access to relevant files or other information pertaining to the present representation or which prevent the tainted lawyer from sharing in the fees derived from such litigation.

Id.; LaSalle Nat'l Bank, 703 F.2d at 257.

K&D claims that Mr. Mitchell has been screened from any access to existing files in which ECL represented the plaintiffs and has not provided any information, advice, or counseling related to this litigation or specifically regarding any of the plaintiffs or any strategies they might employ in this case. K&D has not explained in the papers it presents to this court how Mr. Mitchell is screened from ECL conflicts nor does it provide affidavits by Mr. Mitchell or the other firm members, typically offered when questions arise regarding the passing of confidential client information.

Moreover, there is evidence of a hole in whatever Chinese wall K&D erected: Mr. Mitchell entered an appearance in a state court case on behalf of these very same defendants. Although the plaintiffs in that case are represented by the Legal Assistance Foundation ("LAF"), LAF consulted with ECL regarding the issues nearly identical to those in this case, and this during the period of Mr. Mitchell's employ at ECL. Any discussions Mr. Mitchell may have with his colleagues or the defendants will almost certainly

disclose confidences and work product he picked up while he was representing his clients at ECL and harm his former clients.

The small size of the firm also weighs heavily against an effective screen. Although K&D does not explain the structure of the firm, it cannot have the formal divisions of large firms which often help facilitate a successful Chinese Wall. In such a small firm, it is questionable whether a screen can ever work. The Second Circuit thought as much in *Cheng v. GAF Corp.*, 631 F.2d 1052 (2d Cir. 1980)(vacated on other grounds), when it reversed the district court's failure to disqualify a law firm. The disqualified attorney was a member of a firm of thirty-five attorneys, twenty-one of whom worked in his office and worked in the health law division of the firm while the representation at issue was being handled by the firm's labor division. *Cheng,* 631 F.2d at 1054. Despite the firm's submission of affidavits stating that the attorney had not worked on the case, had not disclosed any confidences or discussed the merits of the case, and would not be allowed to have any substantive involvement in it, the Court of Appeals concluded that "[a]lthough we do not question [the disqualified lawyer's] integrity or his sincere efforts to disassociate himself from the Cheng case, we are not satisfied that under the facts of this case the screening will

be effective." *Cheng*, 631 F.2d at 1058 (citations omitted); *see also Marshall v. State of New York Div'n of State Police*, 952 F.Supp 103, 110 (N.D.N.Y. 1997)(15 lawyer firm disqualified due to doubts that even the most stringent screening mechanisms could be effective). I do not question the integrity of Mr. Mitchell, but given the small size of the firm and Mr. Mitchell's involvement with "payday loan" type cases at ECL and now at K&D, I do not find it likely that K&D can maintain a Chinese wall sufficient to protect the integrity of this trial and withstand the understandable scrutiny of Mr. Mitchell's former clients.[1] In addition to the danger of tainting the underlying trial, K&D's continuing representation of the defendants creates the type of unacceptable appearance of professional impropriety condemned in Canon 9 of the Code of Professional Responsibility. *See Emle Industries*, 478 F.2d 562, 565 (2d Cir. 1973)(where public confidence in Bar would be undermined, "even an appearance of impropriety requires prompt remedial action by the court.").

Finally, this motion for disqualification does not involve a

---

[1] As the Second Circuit found in *Cheng*, "[i]f after considering all of the precautions taken ... this Court still harbors doubts as to the sufficiency of these preventive measures, then we can hardly expect [the former client] or members of the public to consider the attempted quarantine to be impenetrable." *Cheng*, 631 F.2d at 1058.

-8-

plaintiff wielding the ethical rules as a weapon. It was K&D's own personnel decision to recruit Mr. Mitchell away from its courtroom adversary in the midst of this case which led to its disqualification. Plaintiffs' motion to disqualify Konicek and Dillon from further representation of the defendants in this action is therefore GRANTED.

ENTER ORDER:

*Elaine E. Bucklo*

Elaine E. Bucklo
United States District Judge

Dated: September 21, 2000

Copies have been mailed to:

Daniel A. Edelman
Edelman, Combs & Latturner
120 S. LaSalle Street, 18th Fl.
Chicago, IL  60603

Attorney for Plaintiffs

Daniel F. Konicek
Konicek & Dillon
112 N. First Avenue, #401
St. Charles, IL  60174

Attorney for Defendants